UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                :

PATRICK B. GARMHAUSEN, CHARLES F.      :     07-CV-2565 (ARR) (LB)
GARMHAUSEN, SUSAN I. GARMHAUSEN, and  :
PATRICK S. GARMHAUSEN, by his father, PATRICK  :     <u>OPINION & ORDER</u>
B. GARMHAUSEN,                            :
                                :

             Plaintiffs,                :
                                :

     -against-                        :
                                :

ERIC HOLDER, Attorney General of the United States,  :
FEDERAL BUREAU OF INVESTIGATION SPECIAL  :
AGENT JAMES MCCARTHY, FORMER ASSISTANT  :
UNITED STATES ATTORNEY WAYNE BAKER,    :
UNITED STATES DEPARTMENT OF JUSTICE and   :
DEBRA T. CORRIDAN, a/k/a DEBRA T.        :
GARMHAUSEN,                          :
                                :

            Defendants.             :
------------------------------------------------------------------- X

ROSS, United States District Judge:

      Plaintiffs Patrick B. Garmhausen ("Garmhausen") and his parents, Charles F.

Garmhausen and Susan I. Garmhausen (the "Grandparents"), are the father and grandparents,

respectively, of Patrick Sean Garmhausen ("Patrick Sean"), on whose behalf they also bring this

action. They allege that Patrick Sean is in the Witness Security Program (the "Program") with

his mother, Debra T. Corridan ("Corridan"), who, they complain, denies them court-ordered

custody and visitation rights with respect to Patrick Sean. Plaintiffs further complain that FBI

Special Agent James McCarthy ("McCarthy") and former Assistant United States Attorney

Wayne Baker ("Baker") are responsible for Corridan and Patrick Sean's placement into the

Program and that they, together with Attorney General Eric Holder ("Holder") and the United

States Department of Justice (the "DOJ"), failed to comply with the authorizing legislation and

constitutional due process with respect to Patrick Sean's relocation through the Program. Plaintiffs seek an order compelling Holder, McCarthy, and the DOJ to disclose the whereabouts of Patrick Sean, an order requiring Corridan to comply with state visitation and custody orders, and money damages against McCarthy and Baker.

Defendants Holder, McCarthy, and the DOJ (the "Moving Defendants") now bring this motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. For the reasons explained below, the motion is granted in part and denied in part.

## I. BACKGROUND

### A. Legal Background

1. <u>Historical Background to the Program Statute</u>

Congress first established the Witness Security Program as part of the Organized Crime Control Act of 1970 (the "1970 Act"), with the purpose of guaranteeing the safety of government witnesses who agree to testify against alleged participants in organized criminal activity and thereby creating an incentive for persons involved in such activities to become informants. <u>See</u> Pub. L. No. 91-452, §§ 501-504, 84 Stat. 922, 933-34 (1970). The 1970 Act's witness security provisions were terse and vague, however, and it soon became apparent that more detailed provisions were needed to address two broad issues: crimes committed by protected persons following their relocation and the failure of protected persons to meet their civil law obligations, including money judgments and child custody and visitation orders. <u>See</u> H.R. Rep. No. 98-767, pt. 1, at 11-12 (1984). Between 1970 and 1984, when Congress revised the Program's authorizing legislation, several child custody and visitation cases reached the United States Courts of Appeals. These early cases informed the drafting of the statutory provisions at issue in

the present case.  Some of these cases, discussed below, also specifically addressed issues that the present case also raises.

In Leonhard v. Mitchell, a father sought a writ of mandamus to compel DOJ officials to disclose the location and identities of his three children, who had been relocated with their mother for their protection.  473 F.2d 709 (2d Cir. 1973).  The Second Circuit held that sovereign immunity did not bar the suit but that mandamus was unavailable in the absence of a clear duty.  Id. at 712 n.2, 713-14.  The court explicitly rejected Leonhard's attempt to locate such a duty in the Due Process Clause of the Fifth Amendment, noting the "absence of a clear constitutional right to custody or visitation rights."  Id. at 713.[1]

In Ruffalo v. Civiletti, the plaintiff mother, who had legal custody of her son at the time of his relocation, brought suit both against federal officials and against her ex-husband who had been relocated with their son.  702 F.2d 710 (8th Cir. 1983).  The Eighth Circuit held that the district court had subject matter jurisdiction to hear the claims despite the doctrine of sovereign immunity and the domestic relations exception to federal jurisdiction.  Id. at 714 n.7, 717-18. The court concluded that Ruffalo "made out a strong prima facie entitlement to some form of equitable relief" and remanded the case for an evidentiary hearing to determine what kind of relief, if any, would be appropriate.  Id. at 712.

Finally, in Franz v. United States, a father with visitation rights brought an action on behalf of himself and his children against the United States, the DOJ, and the Attorney General seeking declaratory and injunctive relief, and money damages, related to the children's

---

[1] This conclusion was later questioned in light of Santosky v. Kramer, in which the Supreme Court held that the "fundamental liberty interest of natural parents in the care, custody, and management of their child" is protected by due process.  455 U.S. 745, 753 (1982).  See, for example, Prisco v. United States Department of Justice, in which the Third Circuit reviewed the relevant case law and concluded that the former Attorney General was not entitled to summary judgment on the issue of qualified immunity for the relocation of plaintiff's daughter through the Program without notice to plaintiff.  851 F.2d 93, 98 (3d Cir. 1988), overruled on other grounds by Acierno v. Cloutier, 40 F.3d 597, 600 (3d Cir. 1994), abrogated on other grounds by Behrens v. Pelletier, 516 U.S. 299, 312 & n.5 (1996).

placement into the Program with their mother and stepfather. 707 F.2d 582 (D.C. Cir. 1983). Finding that plaintiffs possessed a "fundamental liberty interest" in one another's companionship, the court urged the creation of guidelines for the Program that could accommodate such interests and engaged in a lengthy discussion of how adequate guidelines would look. See id. at 603.

2.      The Program Statute

In response to these cases and to other developments, including crimes committed by protected persons and their failures to satisfy civil judgments against them, Congress passed the Witness Security Reform Act of 1984, which enacted the current code provisions. Pub. L. 98-473, §§ 1207-1210, 98 Stat. 1837, 2153-63 (1984) (codified as amended at 18 U.S.C. §§ 3521-3528 (the "Program Statute")); see H.R. Rep. No. 98-767, pt. 1, at 13 ("The section relating to child custody problems is an attempt to respond to the decisions of several courts of appeal.") (citing Franz, 707 F.2d 582). Three sections of the Program Statute are particularly relevant to this case, and the court therefore describes them in detail.

a.      General Provisions

Section 3521 establishes the basic parameters of the Program, empowering the Attorney General to take the steps necessary to provide for the relocation and other protection of witnesses and potential witnesses if he determines that they are in danger. § 3521(a)(1). The Attorney General may also provide for the protection of such a witness's immediate family members if they may also be endangered on account of the participation of the witness in a judicial proceeding. Id. The decision to provide protection is discretionary, however, and "[t]he United States and its officers and employees shall not be subject to any civil liability on account of any decision to provide or not to provide protection under this chapter." § 3521(a)(3).

Before providing protection to any person under the Program Statute, the Attorney General shall, to the extent practicable, obtain information relating to the suitability of the person for protection, §3521(c), and enter into a memorandum of understanding with that person, § 3521(d). The memorandum of understanding must include the agreement of the person, inter alia, to comply with legal obligations and civil judgments against that person, to designate another person to act as agent for the service of process, and to make a sworn statement of all outstanding legal obligations, including obligations concerning child custody and visitation. § 3521(d)(1).

For substantial breach of the memorandum of understanding or for providing false information concerning the memorandum or the circumstances pursuant to which protection was provided, including information with respect to child custody and visitation, the Attorney General may terminate protection. § 3521(f). Such termination is not subject to judicial review. Id.

The Attorney General may also "disclose or refuse to disclose the identity or location of the person relocated or protected, or any other matter concerning the person or the program" after weighing enumerated factors including the danger that disclosure would pose to the person and the benefit that it would afford the person seeking the disclosure. § 3521(b)(1)(G). He shall, however, disclose such information to law enforcement officials if the protected person is under investigation for a crime of violence or any offense punishable by more than one year in prison. Id. No one to whom the Attorney General discloses such information may redisclose it without his authorization. Unauthorized disclosure is punishable by a fine of $5,000 or five years imprisonment, or both. § 3521(b)(3).

b.    Civil Judgments Provisions

Section 3523 provides a mechanism for holding a protected person to account for his or her civil law obligations.  If a protected person is made a defendant in a civil action, the Attorney General "shall make reasonable efforts to serve a copy of the process upon the person protected at the person's last known address. . . . [and] shall notify the plaintiff in the action whether such process has been served."  § 3523(a).  If a judgment is entered against the protected person, the Attorney General shall determine whether the person has made reasonable efforts to comply with the judgment and take appropriate steps to urge the person to comply with it.  Id.  If the Attorney General determines that the protected person has not made reasonable efforts to comply, he may disclose the identity and location of that person to the judgment creditor, upon the express condition that further disclosure by the judgment creditor may be made only to the extent that it is essential to his efforts to recover under the judgment.  Id.  "Any such disclosure or nondisclosure by the Attorney General shall not subject the United States and its officers or employees to any civil liability."  Id.

Should the Attorney General decide, in his discretion, not to disclose the identity and location of the protected person, the judgment creditor may bring an action against the protected person in the United States District Court for the district in which the judgment creditor resides.  § 3523(b)(1).  "The Attorney General shall appear in the action and shall affirm or deny the statements in the complaint that the person against whom the judgment is allegedly held is provided protection under this chapter and that the petitioner requested the Attorney General to disclose the identity and location of the protected person for the purpose of enforcing the judgment."  § 3523(b)(2).  If the court determines that the petitioner holds a valid judgment and the Attorney General has declined to disclose the identity and location of the protected judgment

debtor, then "the court shall appoint a guardian to act on behalf of the petitioner to enforce the judgment." § 3523(b)(3). Then the Attorney General "shall disclose to the guardian the current identity and location of the protected person," and the guardian has the duty to enforce the judgment. § 3523(b)(3)-(4). The guardian may not disclose the identity or location of the protected person other than to a court in order to enforce the judgment. § 3523(b)(4).

      c.      <u>Child Custody and Visitation Provisions</u>

Section 3524 addresses custody and visitation arrangements with respect to children provided protection through the Program. "The Attorney General may not relocate any child in connection with protection provided to a person under this chapter if it appears that a person other than that protected person has legal custody of that child." § 3524(a). Before providing protection to a child and custodial parent, the Attorney General shall obtain and examine a copy of any court order of custody or visitation for the purpose of assuring that compliance with the order can be achieved. § 3524(b). If compliance with a visitation order cannot be achieved, the Attorney General may provide protection only if the parent being relocated initiates legal action to modify the existing court order and agrees in writing to abide by any resulting court orders. <u>Id.</u>

Next, under subsection (c), "the Attorney General shall, as soon as practicable after the person and child are so relocated, notify" the non-protected parent, to whom the protected parent has obligations with respect to child custody or visitation, that the child has been relocated through the Program. § 3524(c). "The notification shall also include statements that the rights of the parent not so relocated to visitation or custody, or both, under the court order shall not be infringed by the relocation of the child and the Department of Justice responsibility with respect thereto." <u>Id.</u> The DOJ will pay all reasonable costs of transportation and security for visitation

at a secure location, up to thirty days or twelve times a year.  Id.  Additional visitation may be provided for at the discretion of the Attorney General.  Id.

Subsections (d), (e), and (f) of Section 3524 create several rights of action in a federal district court.  Under Section 3524(d)(1), any party to a court order regarding child custody or visitation may bring an action to modify that order.  Under Section 3524(d)(5), a non-protected parent may bring an action against a protected parent for violation by that protected parent of a court order with respect to child custody or visitation.  Then,

> [i]f the court finds that such a violation has occurred, the court may hold in contempt the protected person.  Once held in contempt, the protected person shall have a maximum of sixty days, in the discretion of the Attorney General, to comply with the court order.  If the protected person fails to comply with the order within the time specified by the Attorney General, the Attorney General shall disclose the new identity and address of the protected person to the other parent and terminate any financial assistance to the protected person unless otherwise directed by the court.

§ 3524(d)(5).  "The United States shall be required by the court to pay litigation costs, including reasonable attorneys' fees, incurred by a parent who prevails in enforcing a custody or visitation order; but shall retain the right to recover such costs from the protected person."  § 3524(d)(6).

Under Section 3524(e)(1), if the Attorney General determines that the implementation of a court order with respect to child custody or visitation is made "substantially impossible" by the child's relocation through the program, he may bring an action to modify that court order on behalf of the protected parent.  Upon clear and convincing evidence that implementation would be substantially impossible, "the court may modify the court order but shall, subject to appropriate security considerations, provide an alternative as substantially equivalent to the original rights of the nonrelocating parent as feasible under the circumstances."  § 3524(e)(1).

Section 3524(f) provides for a right of action where a protected parent owes child custody or visitation obligations that are not imposed by a court order.  In such a case, either parent may

bring an action for an order of custody or visitation.  § 3524(f).

The United States is obligated to pay the cost of any action brought under Subsections (d), (e), and (f) of Section 3524.  See § 3524(h)(1).

**B.    Allegations in the Complaint and Facts of Public Record**

Patrick Sean was born to Corridan and Garmhausen on October 17, 1997.  Compl. ¶ 6. On March 4, 2002, the parents were divorced by a decree of the New York Supreme Court, Suffolk County, which awarded custody of Patrick Sean to Corridan and granted certain visitation rights to Garmhausen.  Id. ¶ 12, Ex. A.  Later that year, Garmhausen brought a motion seeking custody of Patrick Sean, which motion was denied on July 29, 2003.  Def. Sealed Ex. B at 55.[2]  In June 2003, while the motion was pending, the Supreme Court temporarily restricted Garmhausen's visitation rights in light of a reported Secret Service investigation into his activities.  Def. Sealed Exs. C, E.  Observing that no testimony or other evidence was produced to substantiate the nature of the Secret Service investigation, the New York Supreme Court granted Garmhausen's motion to terminate supervised visitation on July 29, 2003, the same day that it denied his custody application.  Def. Sealed Ex. B at 62.  The court stated that "everything reverts back to the original orders that are in this case or the Judgment of Divorce concerning custody, visitation," and other matters.  Id.

In or about September 2003, Garmhausen took his son out of New York without communicating their whereabouts to Corridan.  Compl. ¶ 15.  Garmhausen was subsequently arrested in Florida and prosecuted in the Eastern District of New York by Baker, then an Assistant United States Attorney.  Id. ¶ 16.  On February 6, 2004, Garmhausen pleaded guilty to

---

[2] Pursuant to the May 6, 2010 order of Magistrate Judge Bloom and in light of plaintiffs' concern about the "sensitive" nature of certain state court records, the Moving Defendants submitted their exhibits under seal and "for parties' eyes only" on June 24, 2010.  The sealed exhibits referred to in this opinion are orders, including oral orders, of the New York State courts.

international parental kidnapping, in violation of 18 U.S.C. § 1204. On June 14, 2004, he was sentenced to fifteen months in prison and one year of supervised release. See Judgment, No. 03-CR-1175 (E.D.N.Y. June 14, 2004) (Spatt, J.). The supervised release terms included that Garmhausen was to communicate with his son only in writing; visitation was made subject to the order of the Suffolk County Family Court and Supreme Court. Id.

Upon his release from federal custody, Garmhausen was charged by New York State with custodial interference in the first degree, to which he pleaded guilty. Compl. ¶¶ 20-21. On November 17, 2004, he was sentenced to time served; on that same date the County Court of Suffolk County issued a five-year order of protection against him (expiring November 17, 2009). See id. ¶ 22, Ex. B. This order served to extend a previous, temporary order of protection issued on February 25, 2004 by the same court. See Def. Sealed Ex. H. Both orders directed him to "stay away" from Corridan and Patrick Sean and contained the following language, reproduced verbatim below:

> Specify other conditions defendant must observe: SUBJECT TO ANY FAMILY COURT AND/OR SUPREME COURT ORDER OF CUSTODY OR VISITATION. DEFENDANT SHALL BE PERMITTED TO COMMUNICATE WITH PATRICK S. GARMHAUSEN *BY MAIL*."

Id.; Compl., Ex. B.

On June 25, 2004, while Garmhausen was in federal custody, the Family Court of Suffolk County granted the Grandparents visitation rights with respect to Patrick Sean. Compl. ¶ 27, Ex. C. Under the terms of the order, the Grandparents were to ensure that Patrick Sean had no contact of any kind with Garmhausen. Id. Ex. C.

Plaintiffs allege that, also while Garmhausen was incarcerated, McCarthy and Baker arranged for Corridan and Patrick Sean to be relocated through the Program. Compl. ¶ 18. Plaintiffs allege that Baker and the Moving Defendants failed to produce or acted with reckless

indifference or in bad faith in producing a sworn statement from Corridan concerning her visitation-related obligations.  Id. ¶ 25.  Plaintiffs also allege that Corridan falsely represented to the Attorney General in the required memorandum of understanding that she would comply with her legal obligations, including visitation orders.  Id. ¶ 28; see § 3521(d)(1).  Further, plaintiffs accuse McCarthy of arranging for new charges to be brought against Garmhausen in Florida, discouraging the Suffolk County sheriff's office from enforcing a warrant for Corridan's arrest based on the Grandparents' visitation order, and arranging for a 2005 custody order from the Family Court to be vacated.  Compl. ¶¶ 29-35.  Finally, plaintiffs allege that Garmhausen received no notice of Patrick Sean's participation in the Program in violation of the Program Statute.  Id. ¶ 24; see § 3524(c).

Plaintiffs commenced the current action on April 27, 2007.  While this action was pending, on December 12, 2007, Garmhausen filed a petition in the Family Court of Queens County for sole custody of Patrick Sean; Corridan failed to appear, and the petition was granted in her absence on May 22, 2008.  Compl. ¶¶ 36-37, Ex. D.

## II.  STANDARD OF REVIEW

The Moving Defendants seek dismissal of the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, respectively.

Under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction.  J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).  As the party seeking to invoke the jurisdiction of the court, plaintiffs bear the burden of demonstrating that subject matter jurisdiction is proper based

on facts existing at the time the complaint was filed.  Scelsa v. City Univ. of New York, 76 F.3d 37, 40 (2d Cir. 1996).  For the purposes of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court may consider affidavits and other materials beyond the pleadings. See J.S. ex rel. N.S., 386 F.3d at 110; Robinson v. Gov't of Malaysia, 269 F.3d 133, 140-41 & n.6 (2d Cir. 2001).

Under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and must also draw all reasonable inferences in favor of the plaintiff.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Freedom Holdings, Inc. v. Spitzer, 363 F.3d 149, 151 (2d Cir. 2004).  The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Only a "plausible claim for relief survives a motion to dismiss."  LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 476 (2d Cir. 2009).  Thus courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009) (citation and internal quotation marks omitted).

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court may consider those documents submitted by the parties that are matters of public record or are deemed included in the complaint.  See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998); Sira v. Artuz, 380 F.3d 57, 67 (2d Cir. 2004).  As a supplement to the New York State court orders attached to the complaint, the Moving Defendants have submitted as sealed exhibits other related orders of this court and of the New York Supreme Court and Family Court.  These orders are properly before the court on this motion.  "[A court] may also look to public records—such as the state court's divorce

decree . . .—in deciding a motion to dismiss." <u>Taylor v. Vermont Dept. of Educ.</u>, 313 F.3d 768, 776 (2d Cir. 2002); <u>see also</u> <u>Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 369 F.3d 212, 217 (2d Cir. 2004) (complaints filed in state court appropriately considered on a Rule 12(b)(6) motion). The court takes notice of these orders and filings "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991); <u>Pelosi v. Spota</u>, 607 F. Supp. 2d 366, 371 (E.D.N.Y. 2009).

## III. DISCUSSION

### A. Sovereign Immunity

The Moving Defendants argue that the court lacks subject matter jurisdiction to hear this case because the United States has not waived its sovereign immunity from suit with respect to this action.[3] It is well settled that "[t]he United States as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit." <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980) (quoting <u>United States v. Sherwood</u>, 312 U.S. 484, 586 (1941)). The shield of sovereign immunity also protects United States agencies and officers acting in their official capacities. <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994); <u>Dotson v. Griesa</u>, 398 F.3d 156, 177 (2d Cir. 2005). A waiver of sovereign immunity is therefore a jurisdictional prerequisite to suit against the United States and its agencies and officers. Such a waiver, it has been said, "cannot be implied but must be unequivocally expressed." <u>Doe v. Civiletti</u>, 635 F.2d 88, 93 (2d Cir. 1980) (citation and internal

---

[3] The court is troubled that counsel for the Moving Defendants has chosen to rely on blanket jurisdictional defenses and ad hominem attacks rather than squarely address the Program Statute's provisions for judicial enforcement and modification of child custody and visitation orders. Counsel's disregard of the cases, identified in conference by Magistrate Judge Bloom, which hold that sovereign immunity and the domestic relations exception to federal jurisdiction do not apply to similar actions, is particularly distressing. <u>See</u>, <u>e.g.</u>, <u>Ruffalo</u>, 702 F.2d at 714 n.7, 717-18.

quotation marks omitted) (dismissing for lack of subject matter jurisdiction an action seeking specific performance of an agreement to provide protection through the Program). No such waiver appears in the Program Statute, which, indeed, exempts the United States and its officers and employees from civil liability on account of any decision to provide or not to provide protection and exempts from judicial review of any decision by the Attorney General to terminate protection. § 3521(a)(3), (f).

The Supreme Court has, however, recognized certain exceptions to sovereign immunity. In particular, sovereign immunity will not shield the action of an officer of the sovereign when that action is not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void. Dotson, 398 F.3d at 177. In other words, if an "officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden[] . . . [h]is actions are ultra vires his authority and therefore may be made the object of specific relief." Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689 (1949); see also Dugan v. Rank, 372 U.S. 609, 621-22 (1963). Sovereign immunity is therefore no bar to claims for prospective relief that seek to compel governmental defendants to conform their official conduct to a legal mandate. Dotson, 398 F.3d at 178 (citing Edelman v. Jordan, 415 U.S. 651, 668 (1974)). Even in such a case, a retrospective award of money damages may not be sought from the sovereign, though it may be sought from officers in their individual capacities, if they are alleged to have violated a plaintiff's constitutional rights, subject to the defense of qualified immunity. See id.; Liffiton v. Keuker, 850 F.2d 73, 78 (2d Cir. 1988) (citing Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)).

Plaintiffs' claims for mandamus may fall within this exception. Although the mandamus

statute, 28 U.S.C. § 1361, is not itself a waiver of sovereign immunity, "[i]f a plaintiff seeks a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity . . . no separate waiver of sovereign immunity is needed." Washington Legal Found. v. United States Sentencing Comm'n, 89 F.3d 897, 901 (D.C. Cir. 1996). No waiver is needed because a public official's failure to perform his duties is not a sovereign act; it is an act against the sovereign. Whether the exception applies turns first, therefore, on the existence of the duty, and the application of sovereign immunity merges with the merits of the petition for mandamus. See id. at 901-02.

Doe v. Civiletti, cited by the Moving Defendants, does not compel a different result. In that case, the Second Circuit held, on sovereign immunity grounds, that the district court lacked jurisdiction to hear a plaintiff's claims regarding federal defendants' alleged breach of an agreement to provide protection and subsistence benefits to her and her family through the Program. See 635 F.2d at 93. Observing that the mandamus statute is not a waiver of sovereign immunity, the court found that it could not sustain jurisdiction over the case. Id. at 94. The court wrote, "Congress never intended § 1361 to be interpreted so as to allow the extraordinary writ of mandamus to be converted into a device for obtaining piece-meal solution of contractual disputes to which the United States is a party." Id. (citation and internal quotation marks omitted). Doe's holding is now codified by the Program Statute, which exempts from judicial review decisions by the Attorney General to terminate protection. See § 3521(f); United States v. Gigante, 187 F.3d 261, 262 (2d Cir. 1999) (district court lacked jurisdiction to review termination of a Program participant pursuant to § 3521(f)). Doe should not be read more broadly than the statute. It is clear that mandamus remains available to compel an officer to perform a clear duty that has not been removed from judicial review, even absent a waiver of

sovereign immunity.  See Dotson, 398 F.3d at 177-78 & n.16; see also Leonhard v. Mitchell, 473 F.2d at 712 n.2 (sovereign immunity no bar to mandamus action seeking to compel federal officials to disclose the location of petitioner's children in the Program); Ruffalo, 702 F.2d at 714 n.7 (sovereign immunity no bar to suit for injunctive relief seeking the whereabouts of her son in the Program).  Nor is the Program Statute's exclusion of civil liability for discretionary decisions to provide or not to provide protection a bar to mandamus jurisdiction over an action to compel the performance of a mandatory duty.  See § 3521(c).

Plaintiffs' Bivens claims are not barred by the doctrine sovereign immunity because they are brought against McCarthy and Baker in their individual capacities.  Courts have also entertained Bivens claims in similar cases before.  See, e.g., Prisco, 851 F.2d 93; Ruffalo, 702 F.2d 710.

**B.      Mandamus**

Jurisdiction under the mandamus statute is limited to actions seeking to compel the performance of a nondiscretionary duty owed to the plaintiff.  28 U.S.C. § 1361; Duamutef v. I.N.S., 386 F.3d 172, 180 (2d Cir. 2004).  (citing Heckler v. Ringer, 466 U.S. 602, 616 (1984)).  In order to invoke mandamus relief, petitioner must show that three elements coexist: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy is available." Anderson v. Bowen, 881 F.2d 1, 5 (2d Cir. 1989) (citation and internal quotation marks omitted); see McHugh v. Rubin, 220 F.3d 53, 57 (2d Cir. 2000).

Plaintiffs identify in the Program Statute three duties of Attorney General that they allege are subject to mandamus.  First, they cite the requirement that the Attorney General enter into a memorandum of understanding with the person to be protected, which includes that person's

agreement to designate an agent for service of process and to comply with any civil judgments and child custody and visitation obligations. § 3521(d)(1). Second, they address the requirement that the Attorney General provide notification to a non-protected parent of his or her child's relocation through the Program as soon as is practicable following such relocation. Id. § 3524(c). Third, they invoke the provision that, if in an action by the nonparticipating parent to enforce parental rights to custody or visitation the federal district court holds the protected parent in contempt, and the protected parent still refuses to honor such obligations for a maximum of sixty days, the Attorney General shall disclose the new identity and location of the protected person to the nonparticipating parent. Id. § 3524(d)(5). For the reasons discussed below, the court determines that it has jurisdiction over Garmhausen's claims against the Attorney General under Section 3524. Because plaintiffs have failed to identify any duties owed to the Grandparents or owed by the other defendants, those claims are dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

1.      Obligations Related to the Memorandum of Understanding

        Plaintiffs' first proposed duty, and the only duty allegedly owed to the Grandparents, cannot support mandamus jurisdiction because it creates no rights in plaintiffs. Section 3521 of the Program Statute directs the Attorney General to enter into a memorandum of understanding with the person to be protected before protection is provided or, in the case of an emergency, shortly thereafter. § 3521(d)(1), (e). Some of the provisions of the memorandum of understanding are evidently designed to allow the Attorney General to safeguard the rights of third parties. For example, the memorandum shall include the agreement of the person to be protected to make a sworn statement of all outstanding legal obligations, including obligations concerning child custody and visitation. § 3521(d)(1)(G). Nevertheless, the memorandum of

understanding creates no rights in anyone except perhaps the Attorney General, who may terminate the protection of a person whom he finds to be in breach. § 3521(f) (providing also that such termination shall not be subject to judicial review). It creates no enforceable rights in the protected person, see Gigante, 187 F.3d at 262, and it certainly creates no rights in plaintiffs.

2.     Obligations Related to Parental Notification

Plaintiffs' second proposed duty, alleged by Garmhausen alone, can support mandamus jurisdiction. The Program Statute provides, in part:

> With respect to any person provided protection under this chapter (1) who is the parent of a child who is relocated in connection with such protection and (2) who has obligations to another parent of that child with respect to custody or visitation of that child under a State court order, the Attorney General shall, as soon as practicable after the person and child are so relocated, notify in writing the child's parent who is not so relocated that the child has been provided protection under this chapter.

Id. § 3524(c). It is undisputed that Garmhausen received no notification of Corridan and Patrick Sean's relocation through the Program, which he alleges took place more than five years ago. The Moving Defendants argue that no notification would have been necessary at the time of the alleged relocation because Corridan was not at that time a parent "who has obligation to another parent . . . with respect to custody or visitation . . . under a State court order." This is so, they argue, because Garmhausen was subject to orders of protection from February 25, 2004, to November 17, 2009, which directed him to "stay away" from Patrick Sean and limited their communication to mail only.

With respect to this claim for prospective, mandamus relief, the court is not called upon to decide whether the suspension of Corridan's obligations also suspended the Attorney's General's duty to notify Garmhausen of her relocation with Patrick Sean. Rather, the court must consider only whether the Attorney General now has a duty to notify Garmhausen whether

Corridan and Patrick Sean are participating in the Program. The court finds that he has such a duty. Whatever was the effect of the orders of protection, they expired over one year ago. The Moving Defendants offer no reason to believe that notification would be impossible. Rather they argue that, even now, notification would not be necessary because the orders' long proscription on visitation "would have nullified the 'child custody arrangements' notification provisions of the Program statute." Def. Reply Br. at 5. The Moving Defendants cite no authority for this surprising proposition, and the court is not persuaded by it. The court finds that, if Corridan and Patrick Sean are participating in the Program, Holder has a plainly defined and peremptory duty to provide Garmhausen with the notification required by Section 3524(c).

3.      Obligations Related to Enforcement by Disclosure

Plaintiffs' third proposed duty may also have merit. The Program Statute provides a disclosure remedy for the wilful violation of child visitation rights by a protected parent:

> With respect to any person provided protection under this chapter who is the parent of a child who is relocated in connection with such protection, the parent not relocated in connection with such protection may bring an action, in the District Court for the District of Columbia or in the district court for the district in which that parent resides, for violation by that protected person of a court order with respect to custody or visitation of that child. If the court finds that such a violation has occurred, the court may hold in contempt the protected person. Once held in contempt, the protected person shall have a maximum of sixty days, in the discretion of the Attorney General, to comply with the court order. If the protected person fails to comply with the order within the time specified by the Attorney General, the Attorney General shall disclose the new identity and address of the protected person to the other parent and terminate any financial assistance to the protected person unless otherwise directed by the court.

§ 3524(d)(5). Garmhausen brings this action against Corridan under Section 3524(d)(5) to enforce his alleged rights to visitation and custody of Patrick Sean pursuant to orders of the New York State courts. Should Garmhausen establish the validity of those orders and the fact of Corridan's violation, the court may hold Corridan in contempt. Should she fail to comply within

a time period not to exceed sixty days, the Attorney General would have the clear, peremptory duty of disclosing Corridan's new identity and address to Garmhausen. In light of his contingent duty, the court has subject matter jurisdiction also over this claim against the Attorney General.

4.      Summary

Garmhausen has adequately alleged two claims for mandamus against Attorney General Holder to fulfill his clear duties under Sections 3524(c) and 3524(d)(5) of the Program Statute. The Grandparents have failed to identify any duty owed to them by any federal official, and their claims for mandamus are therefore dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Because no plaintiff has alleged any duty owed by the DOJ or McCarthy, the mandamus claims against these defendants are likewise dismissed for lack of subject matter jurisdiction.

**C.      Claims Against Corridan**

Plaintiffs seek to compel Corridan to comply with three orders of the New York State courts: (1) the 2002 divorce decree of the Suffolk County Supreme Court, which awarded visitation rights to Garmhausen; (2) the 2004 order of the Suffolk County Family Court, which awarded visitation rights to the Grandparents; and (3) the 2008 order of the Queens County Family Court, which awarded Garmhausen sole custody of Patrick Sean. The Moving Defendants argue that the court lacks personal jurisdiction over Corridan because she has not been served with the complaint and that it lacks subject matter jurisdiction over these claims under the "domestic relations" exception to federal jurisdiction. Def. Br. at 1 nn.1, 3.

1.      Personal Jurisdiction

The Moving Defendants' argument that Corridan has not been served is meritless. If the Attorney General is providing Corridan protection through the Program, then it is his

responsibility to undertake service.  Section 3523 of the Program Statute provides, in the context of civil actions, "The Attorney General shall make reasonable efforts to serve a copy of the process upon the person protected at the person's last known address. . . . [and] shall notify the plaintiff in the action whether such process has been served."  § 3523(a).  Section 3524, on child custody arrangements, lacks this explicit provision for service through the Attorney General, but it requires him to notify the non-protected parent of the child's relocation and of the DOJ's responsibility to enable the exercise of court ordered custody and visitation rights.  § 3524(c). Moreover, the elaborate statutory scheme of Section 3524 provides causes of action in federal court for protected parents, non-protected parents, and the Attorney General, upon whom it also imposes mandatory enforcement obligations.  This section cannot be read otherwise than to require the Attorney General to attempt service.

Indeed, the Program Statute is drafted to give the Attorney General less discretion with respect to child custody arrangements than he has with respect to civil judgments.  Under Section 3523, the Attorney General has discretion to determine whether or not a protected person "has made reasonable efforts to comply with [a civil] judgment."  § 3523(a).  If the Attorney General determines that the protected person has made such efforts, the judgment creditor has no further recourse.  See Gonzalez-Vera v. Townley, 595 F.3d 379, 383 (D.C. Cir. 2010).  If the Attorney General determines that the protected person has not made such efforts, he has further discretion to determine whether or not to disclose the location and identity of that person to the judgment creditor.  § 3523(a).  If the Attorney General decides not to disclose the identifying information, then the creditor is given a right of action in federal court, but in no case can the court compel the Attorney General to disclose that information.  § 3523(b).  Mandatory disclosure is made only to a court-appointed guardian who is then charged with vindicating the plaintiff's rights.  Id.

Under Section 3524(d)(5), by contrast, the Attorney General is given no discretion to determine whether or not the protected parent is complying with child custody and visitation obligations. Rather the district court makes that determination. If the court finds that a violation has occurred and holds the protected parent in contempt, then, failing compliance within a time period not to exceed sixty days, the Attorney General must disclose the protected parent's location and identity to the complaining, non-protected parent. § 3524(d)(5). Even if the Attorney General determines that, as a result of relocation and protection, compliance with a child custody or visitation order would be "substantially impossible," he does not have discretion to ignore it. Rather he may bring an action in the district court to modify the order. § 3524(e)(1).

Thus, the general scheme of the Program Statute demonstrates the clear congressional intent that child custody and visitation disputes involving a protected parented should be removed from the sole discretion of the Attorney General and brought within the jurisdiction of the district court. The court therefore interprets the general obligations imposed on the Attorney General in Section 3524(c) to include an obligation that he make reasonable efforts to serve a protected parent with a complaint brought against that parent pursuant to Section 3524.

2.    Subject Matter Jurisdiction

Garmhausen's claims do not fall within the domestic relations exception to federal jurisdiction because the Program Statute expressly provides plaintiffs with a cause of action in federal court to enforce custody and visitation rights with respect to child who has been relocated through the Program. "[T]he parent not relocated . . . may bring an action, . . . in the district court for the district in which that parent resides, for violation by that protected person of a court order with respect to custody or visitation of that child." § 3524(d)(5). Even before the

enactment of this section in 1984, the Eighth Circuit recognized that the domestic relations exception is no bar to a suit against a protected parent seeking the return of a child who had been relocated with that parent through the Program. <u>Ruffalo</u>, 702 F.2d at 717-18 (reversing the district court's holding that the domestic relations exception deprived it of jurisdiction). The court therefore has subject matter jurisdiction over Garmhausen's claims against Corridan.

The Grandparents, however, have failed to identify an adequate statutory basis for their claims against Corridan. As they concede, they are not "parents" and therefore cannot use Section 3524 to assert their claims against Corridan. Pl. Opp. at 8. They suggest instead that they should be able to bring an action under Section 3523 for the civil enforcement of their 2004 order of visitation from the Suffolk County Family Court. But Section 3523 does not apply to child visitation rights. "General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment." <u>D. Ginsberg & Sons, Inc. v. Popkin</u>, 285 U.S. 204, 208 (1932). Section 3524(d)(5) specifically deals with suits against protected persons for the enforcement of child visitation rights. If this section does not provide the Grandparents with a right of action, they may not find such a right in the more general provisions applicable to civil judgments. Moreover Section 3523 evidently does not countenance enforcement of a visitation order. Its enforcement machinery, through the use of a court-appointed guardian, is uniquely suited to the enforcement of money judgments. <u>See</u> § 3523(b). The Grandparents' claims against Corridan must therefore be dismissed.

## D.     Money Damages

Plaintiffs seek an award of money damages against defendants McCarthy and Baker for violation of their constitutional rights under the Due Process Clause of the Fifth Amendment.

Plaintiffs accuse both McCarthy and Baker of placing Corridan and Patrick Sean into the Program without complying with the authorizing legislation.  Compl. ¶¶ 1, 18.  Specifically plaintiffs allege that "[d]efendants failed to procure a sworn statement of [Corridan] of her outstanding child visitation obligations, and/or, acting in bad faith deliberately or with reckless indifference accepted the false agreement of [Corridan] to comply with her legal obligations concerning visitation" in violation of the Program Statute.  Compl. ¶ 25.  Plaintiffs base these allegations on two components of the required memorandum of understanding between the Attorney General and the protected person: "the agreement of the person to comply with legal obligations and civil judgments against that person," § 3521(d)(1)(D), and "the agreement of the person to make a sworn statement of all outstanding legal obligations, including obligations concerning child custody and visitation," § 3521(d)(1)(G).  Compl. ¶ 25.  Garmhausen also complains that he was not notified of his son's relocation through the Program, in violation of §3524(c).  Compl. ¶ 24.

Damages claims against federal officials, sued in their individual capacities, are cognizable under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, in which the Supreme Court recognized a cause of action for money damages against federal officials who had allegedly violated a plaintiff's Fourth Amendment rights.  See 403 U.S. at 396-97; Dotson, 398 F.3d at 165-66.  The Bivens remedy has subsequently been recognized for violations of the Due Process Clause.  See Davis v. Passman, 442 U.S. 228, 244-49 (1979); Dotson, 398 F.3d at 166.  Indeed, courts have recognized a damages action against federal officials, sued in their individual capacities, for the enrollment of children into the Program without notice to one of their parents.  See Ruffalo, 702 F.2d at 714 n.7; Prisco, 851 F.2d at 96-98.  Nevertheless, the court finds that plaintiffs' Bivens claims must be dismissed pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The claims against Baker must also be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction because, according to the record, he has not been served with the complaint.

1.    Enrollment in the Program

Insofar as plaintiffs allege that McCarthy and Baker are subject to liability for their alleged decision to enroll Corridan and Patrick Sean in the Program, the Program Statute expressly precludes liability for such decisions. "The United States and its officers and employees shall not be subject to any civil liability on account of any decision to provide or not to provide protection under this chapter." § 3521(a)(3).

Nor can McCarthy and Baker be subject to liability for their alleged failure to procure or recklessness in procuring a sworn statement from Corridan of her outstanding child visitation obligations and her agreement to comply with them as part of the memorandum of understanding required by Section 3521(d)(1) of the Program Statute. As already explained in the court's discussion of mandamus jurisdiction, this memorandum of understanding creates no rights in anyone, save perhaps the Attorney General. Because the memorandum of understanding is not enforceable by plaintiffs, defendants' alleged misconduct in procuring it cannot support a cause of action.

2.    Notification

If Garmhausen seeks to hold McCarthy and Baker accountable for the Attorney General's failure notify him of Patrick Sean's relocation as required by Section 3524(c), they are entitled to qualified immunity. "At the motion to dismiss stage of a civil damages action, a defendant is entitled to the shield of qualified immunity if the allegations of the complaint fail to state a claim

that his conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Charles W. v. Maul, 214 F.3d 350, 356-57 (2d. Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  On such a motion, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).

The Moving Defendants argue that no notification would have been necessary at the time of the alleged relocation because of the orders of protection then in effect against Garmhausen.  These orders directed Garmhausen to "stay away" from Patrick Sean and limited their communication to mail only.  Thus, defendants argue, they released Corridan from her "obligations to another parent" within the meaning of Section 3524(c).  Garmhausen responds that the orders of protection had no effect on his visitation rights because they were made "subject to any Family Court and/or Supreme Court Order," which Garmhausen reads retrospectively to include his visitation rights under the divorce decree.  This argument is frivolous.  The orders' requirements that Garmhausen stay away from Patrick Sean and communicate with him only by mail would be rendered meaningless if the orders of protection merely restated the original divorce decree.  The court therefore refuses Garmhausen's invitation to read the "protection" out of the orders and finds instead that they suspended Garmhausen's visitation rights, apart from his right to communicate with his son "by mail," while they were in effect.  Corridan's obligations related to visitation were likewise suspended for the duration of the orders of protection.  It is not obvious, and the court does not decide, whether the suspension of Corridan's obligations also suspended the Attorney's General's duty to notify Garmhausen of her entry into the Program with Patrick Sean.  The court holds only that, in these circumstances,

"officers of reasonable competence could disagree" on whether it was necessary to notify Garmhausen of their relocation during the period for which the orders of protection suspended Garmhausen's visitation rights. See Malley v. Briggs, 475 U.S. 335, 341 (1986); Manganiello v. City of New York, 612 F.3d 149, 165 (2d Cir. 2010). McCarthy and Baker are therefore entitled to qualified immunity with respect to the lack of notice to Garmhausen.

3.    Additional Allegations

Additional allegations against McCarthy appear in the complaint, but are not argued in the briefs. These allegations, too, fail to state a claim plausible claim for relief. First, plaintiffs allege that McCarthy attempted to discourage the Suffolk County Sheriff's Office from enforcing a warrant for Corridan's arrest based on her failure to comply with the 2004 grandparental visitation order. Compl. ¶¶ 28-29. The Grandparents cannot assert a cause of action under Bivens related to the grandparental visitation order because they lack a constitutional right upon which to base their claim. The Supreme Court has held that grandparents do not have a recognized liberty interest in visitation as against an unwilling mother. See Troxel v. Granville, 530 U.S. 57 (2000).

Second, McCarthy allegedly arranged for Garmhausen to be re-arrested and charged in Florida for possession of false identity documents despite the government's alleged agreement in the kidnapping plea agreement not to prosecute Garmhausen for this offense and only to use it at sentencing. Compl. ¶ 30. Although the breach of a plea agreement implicates constitutional due process, the only remedies available for such breach are enforcement of the agreement or withdrawal of the plea. See 1-95-CV-553-P1 v. 1-95-CV-553-D1, 75 F.3d 135, 137 (2d Cir. 1996) (citing Santobello v. New York, 404 U.S. 257, 262-63 (1971)). Garmhausen may not, therefore, base a damages claim on this alleged conduct. See id.

Third, McCarthy allegedly communicated ex parte with the Family Court to cause that court to vacate Garmhausen's 2005 default custody order. Compl. ¶ 32-35. McCarthy is entitled to qualified immunity with respect this alleged communication because the allegations fail to state a claim that this conduct violated a clearly established statutory or constitutional right, especially in light of the order of protection then in effect against Garmhausen.

## IV. CONCLUSION AND ORDER

For the reasons stated above, the court grants the motion in part and dismisses from this action plaintiffs Charles F. Garmhausen and Susan I. Garmhausen and defendants James McCarthy, Wayne Baker, and the United States Department of Justice. Remaining before the court are plaintiff Patrick B. Garmhausen's claims against Debra T. Corridan pursuant to 18 U.S.C. § 3524(d)(5) and against Attorney General Eric Holder for mandamus with respect to 18 U.S.C. §§ 3524(c) and 3524(d)(5). In addition, it is hereby

ORDERED that defendant Eric Holder notify Patrick B. Garmhausen whether Patrick Sean Garmhausen and Debra T. Corridan are being provided protection through the Witness Security Program within fourteen days of this order. If they are being provided such protection, it is further

ORDERED that defendant Eric Holder serve Debra T. Corridan with the complaint in this action and file an affidavit of service with the court within fourteen days of this order. If he is unable to make service after reasonable efforts to do so, the affidavit must so affirm.

SO ORDERED.

/s/ ARR
Allyne R. Ross
United States District Judge

Dated:          December 2, 2010
                Brooklyn, New York